UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VALUEBANK, TEXAS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-294 |
| | § | |
| UP2U, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Internal Revenue Service (IRS) tax refunds payable to a number of taxpayers were received into an account in the name of UP2U, LLC (UP2U). UP2U was a clearinghouse responsible for allocating the funds among the taxpayers and other claimants who allegedly earned fees payable from the taxpayers' refunds and was to distribute the funds based on those allocations. UP2U maintained one or more accounts at ValueBank, Texas, for that purpose and funds had accumulated there due at least in part to faulty bank account information for those who were to receive distributions. UP2U has disclaimed any interest in the interpled funds amounting to $1,085,489.49, which have been deposited into the registry of the Court. Docket Entry February 13, 2013.

### SUMMARY OF CLAIMS AND MOTIONS

It is undisputed that the interpled funds represent only the amount withheld from the taxpayers for fees of private firms or individuals related to the preparation and processing of the tax returns. The tax refund due to the taxpayers (net of preparation and processing fees) had already been distributed to the taxpayers prior to this action. Before

the Court are four competing summary judgment motions of the various claimants, summarized as follows:

- **The United States' (Government's) Motion for Full or Partial Summary Judgment (D.E. 106)**. The Government contends that the interpled funds represent erroneous refunds paid in error to some or all of a list of 1,708 taxpayers (seeking recovery on a taxpayer-by-taxpayer basis) and/or contract payments due to Electronic Return Originators (EROs) doing business through Simply Taxes d/b/a Mo' Money Tax Service (MMT) as fees on some or all of 13,269 processed tax returns (seeking recovery on an ERO-by-ERO basis). The Government also seeks to recover all of the interpled funds because it erroneously paid out more than the full amount of interpled funds when looking at all of the 13,269 processed tax returns without regard to what amounts were captured in this interpleader.

    These claims are all based on allegedly false, fraudulent, or excessive education credits on tax returns prepared through Simply Taxes and its allegedly related software company, Em-Tax. The Government argues that its claim, based upon statute, is superior to that of Simply Taxes (and its EROs), which the Government claims is responsible for the erroneous refunds. While the Government does not dispute the claim asserted by Illinois, it claims priority over that claim. The Government argues that no other claimant should be paid until the Government is made whole.

- **The State of Illinois' (Illinois') Motion for Summary Judgment (D.E. 107)**. First, Illinois makes a claim to all funds generated by alleged unfair or deceitful conduct of Simply Taxes d/b/a MMT and Em-Tax with respect to tax returns prepared for Illinois taxpayers. The alleged wrongful conduct includes falsely advertising a tax rebate program, using a generous rebate program to trick taxpayers into providing personal information that was then used without their permission to file tax returns on their behalf, and misrepresenting the full cost of MMT's tax preparation services. Second, it asserts its money judgment against MMT and resulting competing rights to payment from any funds claimed by Simply Taxes and Em-Tax on account of any contract rights with MMT (and its Illinois EROs).

- **Simply Taxes, LLC's (Simply Taxes') Motion for Summary Judgment (D.E. 110)**. Simply Taxes claims the right to recover ERO fees generated in the preparation of tax returns as a franchisee of MMT in the Chicago area. Those fees were withheld from the taxpayers pending distribution to Simply Taxes and/or the individual EROs. Simply Taxes further challenges the claims of the Government and Illinois on a "no evidence" basis.

- **Em-Tax Software, Inc.'s (Em-Tax's) Motion for Summary Judgment (D.E. 112)**. Em-Tax seeks to recover software licensing fees on a per-tax return basis, which fees were withheld from the taxpayers pending distribution to Em-Tax. It further disputes the claims of Illinois and the Government, echoing the arguments of Simply Taxes.

## JURISDICTION

This interpleader action was filed in the 347th Judicial District Court of Nueces County, Texas, on August 23, 2012. D.E. 1-1. The Government removed the case to this Court on September 21, 2012, reciting jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1346 (United States as a defendant). D.E. 1. This case involves federal statutory rights to recover erroneous tax refunds and the Government (improperly named as the Internal Revenue Service) was named as a Defendant. D.E. 1-1. To the extent that this action also involves state law issues against other Defendants, the Court has jurisdiction pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

Removal was accomplished, in part, pursuant to 28 U.S.C. §§ 1441 (general removal), 1442 (federal officers or agencies), and 1446 (general procedure). No motion to remand was filed. However, in its Motion for Summary Judgment, Em-Tax suggests that removal was improper because it did not consent to removal as required by 28 U.S.C. § 1446(b)(2)(A). First, consent is required only if the sole basis for removal is 28 U.S.C. § 1441(a), which was not the case here. Second, "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). The claim of a defect in consent was not raised within 30 days after removal. Removal was proper and any objection based on a lack of consent or any other procedural defect was waived.

## FACTS

MMT is a nationwide tax preparation organization based in Tennessee. It offered

tax preparation services through storefronts open from December through April each year. Simply Taxes, owned by Rodney Williams, was an MMT franchise operating under the MMT name in Chicago, Illinois.

At least one of the principals of MMT, Markee (or Markey) Granberry, along with others, decided to form Em-Tax in the summer of 2011[1] and began work to provide the software (Tax Exact, owned by TRX) that MMT franchisees were to use in preparing tax returns. D.E. 108-1, 108-5. A "transmitter fee" of $47.95 was charged for each return, with $29.95 going to Em-Tax and $18.00 going to TRX. Illinois claims that the Em-Tax fee was not properly disclosed to taxpayer customers and provided no value to the taxpayers.

While Rodney Williams testified that Em-Tax also provided a support line for software users to get assistance from technical service representatives, Demetrius Moore (one of the "partners" of Em-Tax) denied any other goods or services being offered. D.E. 108-1, 108-5. Em-Tax was created solely to obtain tax preparation software from another source and license it to tax preparers for an additional fee. D.E. 108-5. It had no employees and no other function. *Id*. Technical support was handled exclusively by TRX. D.E. 108-5.

TRX, through its owner Doug Hughes, designated UP2U to process tax refunds and ensure payment of its software licensing fee. D.E. 109-1. Using parsing software compatible with the Tax Exact program and ValueBank accounts, UP2U would separate the fees from the net refund, deposit the segregated funds in their respective holding

---

[1] Em-Tax was not officially formed until February 14, 2012. D.E. 108-5.

accounts, and ultimately authorize ValueBank to make direct deposits or authorize the EROs to cut checks for taxpayers through the Tax Exact system. D.E. 108-5, 109-1.

Simply Taxes operated eight stores in the Chicago, Illinois area under the MMT name in 2011. D.E. 110-6. In 2012, Simply Taxes expanded its operation with sub-franchises or business arrangements described as "partnerships" with owners of other storefronts whereby Simply Taxes would pay half of the rent and receive 40 percent of the fees generated from the preparation of tax returns. D.E. 108-1. Brian Tolliver testified that the 40 percent paid was of a net profit figure, which changed to a 50/50 split in 2012 because Rodney Williams basically took over running the store. D.E. 108-11.

The owners of those storefronts, such as Mark Frazier and Brian Tolliver, were EROs or hired EROs for the returns filed through their respective stores. D.E. 108-1. In his deposition, Mark Frazier was unable to recite the most basic information about the process of becoming an ERO, the fees he charged, or the method by which he filed tax returns. D.E. 108-20. Ronnie Weathersby was a manager and ERO employed by James Orrington, another storefront owner. Weathersby was paid by Orrington from Orrington's portion of the fees split with Simply Taxes. D.E. 108-1. When deposed, Weathersby invoked his Fifth Amendment right to remain silent. D.E. 108-12.

At any rate, Rodney Williams testified that his agreement with the EROs was that he, as Simply Taxes, would collect all ERO fees, retain the portion due to Simply Taxes, and disburse the remainder to the EROs. D.E. 110-6. Mark Frazier and Brian Tolliver confirmed this arrangement. D.E. 110-9, 110-10. Williams claims that the only EROs

associated with Simply Taxes were Brian Tolliver, Markham Frazier, and Ronnie Weathersby. D.E. 110-6.

In December 2011, Simply Taxes began offering a rebate and incentive program called "Money on the Spot." D.E. 108-1. It was supposed to be a program offered by MMT and built into the tax preparation software, but at the last minute MMT decided not to offer it, and Simply Taxes took over the concept and offered it through its Chicago MMT stores. D.E. 108-2. It offered customers an up-front discount on their tax-preparation fees based on such factors as a past tax-preparation relationship, simplicity of return, and whether a past year's refund check was easily processed and free of offsets. D.E. 108-1, 108-2. According to Williams, customers who applied for the Money on the Spot program had to sign paperwork granting MMT the right of first refusal to prepare their tax returns. D.E. 110-6.

When asked in interrogatories to provide information regarding the consumers who applied to participate in the Money on the Spot program, Rodney Williams said that the program had never been implemented. D.E. 108-2. In his deposition, however, he insisted that the program did have about 100 or more participants. *Id*. Trescena Snell was one such individual who sought out the Money on the Spot program. She applied for what she believed was a refund anticipation loan. D.E. 108-10. The MMT location took her last pay stub and some other information and told her they would get back to her. When she did not hear from them—even with an estimate of what sort of advance she could expect—she repeatedly called them and was repeatedly told that they would call

her back. Eventually, she learned that they had prepared and filed a tax return in her name without additional information or authorization. D.E. 108-10.

Other customers had similar experiences seeking money through the Money on the Spot program, receiving nothing, and then learning that the MMT store they went to had filed a tax return on their behalf without their participation and without disclosure of fees. D.E. 108-13, 108-14, 108-15, 108-16, 108-17, 108-18, 108-19. Additional customers went for the sole purpose of having their taxes prepared and filed and were quoted fees without any itemization or disclosure of the purpose of the fees and, when their refunds arrived, they learned that a much larger amount had been deducted from their refund for those fees. D.E. 108-19, 108-21, 108-22, 108-23.

The State of Illinois filed suit in the Circuit Court of Cook County, Illinois, against, among others, MMT, Money Co. USA, LLC, Markey Granberry, and Derrick Robinson, complaining of false advertising and other unfair or deceptive practices. It obtained a default judgment in the amount of $217,190.00 jointly and severally against those particular defendants. D.E. 108-24, 108-25, 108-26. Its claims against Simply Taxes, Rodney Williams, and Global America Management, LLC remain pending.

This interpleader action involves portions of tax refunds that were withheld or could not be distributed due to incorrect account information. The funds were generated as follows from fees charged to taxpayers to be paid from their refunds:

- ERO preparation fees, which were destined, in part, to the EROs through Simply Taxes (D.E. 109-1). The amount of these fees that have been interpled is $930,320.23. D.E. 106-21.

- Transmission Fee a/k/a Transmitter Fee for transmission of the tax return, involving $29.95 for Em-Tax.  D.E. 109-1.  Initially, $395,916.04 of these fees were withheld by UP2U from 13,268 returns. D.E. 106-3.  However, the amount was reduced by costs owed to TRX, UP2U, MMT, and others, resulting in a remaining "ratable share" along with other fees, which are not itemized.  D.E. 106-22, 109-1, 109-2.

- Service Bureau Fee, $39, which went to a Simply Taxes account (D.E. 109-1).  The amount of $144,448.97 of those fees was initially withheld and a "ratable share" as described above are part of the interpled funds. D.E. 109-2.

- Processing Fee, which went to a Simply Taxes/MMT account (D.E. 109-1).  A "ratable share" of $101,251.78 initially withheld from those fees are part of the interpled funds.  D.E. 109-2.

The total amount interpled is $1,085,539.49.  Of that, $930,320.23 are ERO fees and $155,219.26 represents the total of "ratable shares" of the other three fees.

## DISCUSSION

There is no question that the interpled funds, in their entirety, represent tax refunds that the IRS paid to certain individual taxpayers.  The refunds were paid into accounts at ValueBank, Texas, which accounts were controlled by UP2U for the purpose of parsing those tax refunds between the taxpayers and others, pursuant to alleged agreements for the payment of preparation and processing fees.  Amounts ostensibly due to the taxpayers after payment of fees have already been disbursed to them.  At issue are portions of the

refunds that were earmarked for ERO fees, transmitter fees, service bureau fees, and processing fees.

Em-Tax claims the transmitter fees. The remaining fees are claimed by Simply Taxes, in its own name and for distribution of portions of the ERO fees to the designated EROs pursuant to sub-franchise or partnership agreements. Illinois seeks to get in line prior to these claims based on its allegations of false, deceptive, and fraudulent practices of Simply Taxes and its EROs, who, among other things, allegedly failed to properly disclose their fees, particularly with respect to their amount and purpose, including a fee to Em-Tax for a service that had no value to the consumer.

### A. The Government's Claim

According to the Government, it is entitled to all or part of the interpled funds pursuant to 26 U.S.C. §§ 7402(a) and 7405. It claims that the refunds, in part, were erroneous because they were based on false claims for education credits. The Government seeks to recover amounts specifically traceable to particular taxpayers whose refunds have not been fully disbursed on a taxpayer-by-taxpayer basis. Because the amount of the erroneous tax refunds based on education credits processed by Simply Taxes and its EROs exceeds the amounts still held on a taxpayer-by taxpayer basis, the Government also seeks to recover amounts earmarked for the wrongdoing EROs on an ERO-by-ERO basis. Last, the Government claims that the entirety of improper education credits exceeds the entire amount of the interpled funds, entitling it to the full amount held in the registry of the Court, regardless of the claims of any other Defendant.

The first question is whether the Government has shown itself entitled to summary judgment for "erroneous refunds." If so, then the Court must determine whether all or part of that claim trumps the claims of the other Defendants. If it does not trump the other claims, then the Court must determine to what extent any of the other claims have been proven and in what manner the interpled funds must be allocated to those claims.

**1. The Government's Evidence**

The Government's claim is based on the Declaration of Cynthia B. West, an IRS Revenue Agent and Certified Fraud Examiner. D.E. 106-6. Ms. West explained that she was tasked with determining whether the information available to the IRS supported the education credits claimed by the taxpayers whose refunds had been processed by Simply Taxes/MMT-related EROs through ValueBank, Texas. She detailed how an eligible educational institution is required to file a Form 1098-T to verify that a taxpayer is enrolled at that eligible institution. Using the list of taxpayers provided by UP2U and comparing the taxpayer's return data with the Form 1098-T data, Ms. West prepared spreadsheets detailing her findings.

Ms. West noted all tax credits that were claimed that could not be corroborated by a Form 1098-T for the taxpayer or any dependent on that taxpayer's return, determining that those credits represent erroneous refunds. She then used three methodologies to support the Government's claim as to a portion of the interpled funds earmarked for ERO fees. First, on a taxpayer-by-taxpayer basis for the 1,708 taxpayers whose refunds are involved in the interpled funds, she documented a total claim for $636,598.12.

Second, on an ERO-by-ERO basis, she added up all erroneous refunds attributable to particular EROs from all of the 13,269 returns, whether or not their ERO fees for those specific taxpayers were interpled. Assuming that the erroneous refunds could be recovered from the EROs from funds generated through other taxpayers and made available through the interpleader, the Government's claim is for $885,169.91. Last, without limitation by the amount or earmarking of the interpled funds, she concluded that the Simply Taxes/MMT-related EROs were responsible for $1,400,818.30 in erroneous refunds based on false education credits related to the 1,708 taxpayers, part of which funds have already been distributed and were not included in the interpleader.

In addition, Ms. West analyzed the amounts that were interpled and earmarked for transmitter fees, service bureau fees, and processing fees, all of which were to go to Simply Taxes or Em-Tax. She suggests that the Government could claim the Em-Tax transmitter fee in the amount of $29.95 for all 1,708 taxpayers included in the ERO analysis for a total of $51,154.60 of the interpled funds. Looking at the service bureau fees deposited after February 9, 2012, she suggests that the Government's claim could extend to 342 of those fees of approximately $39, for a total of $13,338 more of the interpled funds. Last, she includes a claim for 342 of the processing fees of about $27 per return for a total of $9,234 more. The grand total of non-ERO fees claimed in this manner is $73,726.60.

The Government asserts that all of the amounts subject to the interpleader are subject to its claims because, until distributed to the taxpayer, no amounts may be

assigned as against the Government. Anti-Assignment Act, 31 U.S.C. § 3727. It is further entitled to a return of erroneous refunds under 26 U.S.C. § 7405.

### 2. Challenges to the Government's Claim

The only response to the Government's motion for summary judgment was filed by Simply Taxes. D.E. 127. Simply Taxes argues: (1) the Government cannot claim any erroneous refunds without joining the involved taxpayers; (2) the Government has not defeated Simply Taxes' claim in its summary judgment motion; (3) the West Declaration is insufficient proof of the Government's claim because it fails to do a full review of each taxpayer's return and focuses solely on the education credits; (4) West's reliance on whether or not a Form 1098-T was filed in making her determinations is improper because the existence of a Form 1098-T is not dispositive; (5) West's opinion is unreliable because it is based on hearsay within the IRS records that is not subject to the business or public record exceptions; (6) West is not qualified as an expert; (7) the Government has placed Simply Taxes at a disadvantage by taking and keeping its records, leaving Simply Taxes without access to documents that might support its claim; and (8) the Government does not have standing in this interpleader because its claims are properly against the taxpayers and not against the fund. Each of these arguments will be addressed in turn.

**Joinder of Taxpayers**. No party has filed a motion under Fed. R. Civ. P. 12(b)(7) or 19 seeking joinder of taxpayers as necessary or indispensable parties or seeking dismissal of any claim for failure to join such parties. There is no claim that this action will prejudice the taxpayers should they seek to defeat the Government's claim as to their

particular refunds. In open court, the Government's attorney represented that any funds it receives from this interpleader will be credited to the taxpayers and administrative procedures are in place for addressing taxpayer claims at that time. Additionally, Simply Taxes, in asserting its own claim to the funds, argues that the taxpayers would not be entitled to the interpled funds because the funds represent fees that the taxpayers allegedly agreed to have deducted from their refunds and paid to others, including Simply Taxes. The Court rejects this failure-to-join argument.

**Failure to Affirmatively Defeat Simply Taxes' Claim.** To prevail in this interpleader action, the Government need not defeat Simply Taxes' claim at the outset. Rather, it need only liquidate its own claim and demonstrate whether it has priority status. Here, the Government has offered some proof of the amount of its claim and its priority pursuant to the Anti-Assignment Act. This is not necessarily inconsistent with Simply Taxes having its own claim and its own place in the hierarchy of claims. The Court rejects this failure-to-defeat argument.

**Failure to Fully Review Returns**. The Government has fulfilled its burden of proof to demonstrate its claim for improper education credits as against the Defendants in this case. The fact that a challenge to education credits would ordinarily trigger a full review of each taxpayer's return, which might then reveal facts that would entitle a taxpayer to an offsetting refund is not a matter within the Government's burden of proof in this interpleader action. Rather, it is more appropriate that any such claim to offsetting benefits for the taxpayers be proven by Simply Taxes and its EROs who took responsibility for preparing the tax returns on behalf of the taxpayers. Simply Taxes has

been afforded notice and an opportunity to defeat the Government's claim with any evidence that would defeat it in another proceeding and has failed to submit any such evidence. The Court rejects this failure-to-fully-review argument.

**The Form 1098-Ts Are Not Dispositive**. West described how educational institutions are required to file Form 1098-Ts with the IRS and how the IRS maintains the information in its records, whether originally filed electronically or in paper form. West further described that taxpayer returns should be accompanied by a corresponding Form 1098-T. Filing a claim for educational credits not supported by a Form 1098-T is technically incorrect.

Simply Taxes contests the dispositive nature of the Government's reliance on Form 1098-Ts without providing any evidence to discredit it with respect to any of the tax returns at issue. Simply Taxes has not attempted to demonstrate that any of the taxpayers were actually entitled to the education credits claimed on their returns that the Government has challenged. While it raises "metaphysical doubt," such is not sufficient to defeat summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*per curiam*) (non-movant cannot defeat summary judgment with only metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). The Court rejects this non-dispositive-forms argument.

**Expert's Reliance on Hearsay**. Pursuant to Fed. R. Evid. 703, an expert may rely on evidence that is not admissible if experts in that particular field would reasonably rely on that evidence. Without determining whether the IRS records satisfy the business

records or public records exception to the hearsay rule, the Court determines that Agent West's reliance on the IRS records was reasonable. The Government has shown, through West's Declaration, that educational institutions are legally required to file Form 1098-T and that the filed forms are generally used by Revenue Agents in reviewing tax returns. There is no evidence to suggest that other experts would reject the use of IRS records in a similar tax analysis. Such evidence is necessary to a determination that the Government's proffer is unreasonable. *See Little, supra*. The Court rejects this argument that the expert's reliance on the underlying facts used was unreasonable.

**Expert Qualifications**. Simply Taxes complains that Agent West is not sufficiently qualified for the analysis undertaken to establish the Government's claim. The only complaint about her qualifications is that she is not a certified public accountant. Nothing in the briefing demonstrates why such certification is required. It is undisputed that Agent West has served the IRS as a Tax Auditor and as a Revenue Agent for 25 years. The Government has demonstrated that West has specific training as a Certified Fraud Examiner and has been continuing her IRS-related education annually. Simply Taxes has failed to show any reason that this education, training, and experience is insufficient to support an expert opinion regarding the education credits claimed in this case pursuant to Fed. R. Evid. 702. Her methodology has been adequately explained and there is no evidence calling it into question. The Court rejects this challenge to Agent West's qualifications as an expert witness.

**Missing Records**. Simply Taxes complains that the IRS took its records and has not returned them, leaving it at a disadvantage. The IRS has disclosed that the civil

division does not have the records, having turned them over pursuant to a subpoena to the criminal division and that they are likely in the hands of a Grand Jury. The Government has further disclosed to Simply Taxes in discovery responses reprinted in its Response (D.E. 124) the method by which copies may be obtained. Simply Taxes stated in open court that it chose, as a strategic matter, not to seek the records through the method that the Government disclosed or in any other manner. The Court rejects this missing records argument.

**Government Standing**. Simply Taxes argues that the Government's claim must be made against the taxpayers and not against the interpled funds. Nothing about the statute under which the Government states its claim, 26 U.S.C. § 7405, limits its claim to a proceeding against the taxpayer. Because the Government makes a claim to the interpled funds as "erroneous refunds," and the interpled funds have been traced to specific taxpayers, it has standing to state its claim. The Court rejects the standing argument.

### 3. Conclusion Regarding Government's Claim

The Court DENIES the "no evidence" arguments of Simply Taxes and Em-Tax as to the Government's claim. The Court FINDS that the Government has demonstrated a claim to "erroneous refunds" in the amount of $636,598.12 directly traceable to the interpled funds on a taxpayer-by-taxpayer basis. The Government's claim to additional funds is not based on traceable "erroneous refunds." Instead, it represents an equitable claim to funds that may ultimately be determined to be owned by the EROs or other wrongdoers. The Court does not adjudicate equitable claims on summary judgment.

The Court GRANTS IN PART the Government's Motion for Summary Judgment (D.E. 106) and ORDERS that the Government is entitled to a claim in the amount of $636,598.12. The Government is instructed to file a motion seeking disbursement of that amount, demonstrating any authority for priority of payment against the claims of the remaining parties. In the absence of such a demonstration, the Government's liquidated claim will await pro-rata distribution after the remaining claims are liquidated and priorities determined. This holding is without prejudice as to Patrick Fitzgerald Townsend, an ERO who was permitted to intervene in this action after the Government's motion was filed.

### B. Simply Taxes and Em-Tax Claims

Simply Taxes and Em-Tax offer some testimony that they had agreements with the taxpayers to recover specified fees from the refunds. At the same time, there is some testimony in the record that the taxpayers were never advised of the fees or were advised of fees far less than those being claimed and that no agreement was ever made for the fees that Simply Taxes and Em-Tax now seek to recover. There is a disputed issue of material fact preventing summary judgment on these claims. The Motions for Summary Judgment of Simply Taxes and Em-Tax (D.E. 110 and 112) are DENIED.

### C. Claims of Illinois

As detailed above, Illinois has provided some evidence that the manner by which taxpayers were solicited and the fees that they were charged by Simply Taxes/MMT were deceptive and unfair practices under Illinois law. The Government does not contest Illinois' claims. Simply Taxes and Em-Tax rely on testimony of Rodney Williams, who

claims that the taxpayers had written disclosures and signed relevant agreements. The Court finds that there are disputed issues of material fact precluding summary judgment on Illinois' claim based on its allegations of wrongdoing.

With respect to its prior default judgment, Illinois has failed to demonstrate how a default judgment rendered in state court against non-parties to this case entitles it to the specific interpled funds. The Motion for Summary Judgment of Illinois (D.E. 107) is DENIED.

## CONCLUSION

For the reasons set out above, the Court GRANTS the Government's Motion for Summary Judgment (D.E. 106) and ORDERS that the Government is entitled to a liquidated claim for erroneous refunds in the amount of $636,598.12, subject to distribution upon showing of priority by motion or at trial. The Court DENIES Simply Taxes' Motion for Summary Judgment (D.E. 110), Em-Tax's Motion for Summary Judgment (D.E. 112), and Illinois' Motion for Summary Judgment (D.E. 107). This Order is without prejudice to Patrick Fitzgerald Townsend.

ORDERED this 22nd day of January, 2014.

                                                                     NELVA GONZALES RAMOS
                                                                     UNITED STATES DISTRICT JUDGE